IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CONNIE MATHEWS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-16-223-BMJ |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Connie Mathews, brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the Social Security Administration's denial of an award of disability insurance benefits (DIB) and supplemental security income (SSI). Pursuant to 28 U.S.C. § 636(c), the parties have consented to the exercise of jurisdiction over this matter by a United States Magistrate Judge. The Commissioner has answered and filed the Administrative Record (AR), and both parties have briefed their respective positions. For the reasons stated below, the Commissioner's decision is affirmed.

I.  **Procedural Background**

In December 2013, Plaintiff filed applications for DIB and SSI. AR 178-188. The Social Security Administration (SSA) denied the applications initially and on reconsideration. AR 110-118, 121-126. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision dated October 14, 2015. AR 16-29. The Appeals Council denied Plaintiff's request for review. AR 2-5. Thus, the decision of the ALJ became the final decision of the Commissioner. It is this decision which is the subject of judicial review.

## II. The ALJ's Decision

The ALJ followed the sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (explaining five-step sequential evaluations process); *see also* 20 C.F.R. §§ 404.1520, 416.920. The ALJ first determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, November 1, 2013. AR 18.

At step two, the ALJ determined that Plaintiff has the following severe impairments: degenerative disc disease; status post lumbar fusion; and osteoarthritis. AR 18. At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 22-23.

The ALJ next determined Plaintiff's residual functional capacity (RFC). The ALJ concluded Plaintiff could perform light work with additional physical limitations, but no mental limitations. AR 23.[1]

At step four, the ALJ found that Plaintiff could perform her past relevant work as an insurance office manager and an insurance sales agent. AR 27-28. The ALJ concluded, therefore, that Plaintiff was not disabled for purposes of the Social Security Act. AR 28.

## III. Issues Presented for Judicial Review

Plaintiff seeks judicial review raising two claims of error. First, Plaintiff claims the ALJ erred in making the RFC determination because the ALJ failed to include any limitations resulting from her non-severe mental impairments. Second, Plaintiff claims the ALJ's credibility findings are not supported by substantial evidence.

---

[1] *See* 20 C.F.R. §§ 404.1567(b) 416.967(b) (setting forth requirements for light work).

## IV. Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

## V. Analysis

### A. The Absence of Limitations Related to Plaintiff's Non-Severe Mental Impairments in the ALJ's RFC Determination is Supported by Substantial Evidence

At step two, the ALJ addressed Plaintiff's medically determinable mental impairments of depression and anxiety but found those impairments "do not cause more than minimal limitations in [Plaintiff's] ability to perform basic mental work activities." AR 21. Therefore, the ALJ concluded the mental impairments were not severe. *Id.* Plaintiff does not contest the ALJ's step-two finding.

Instead, Plaintiff claims the ALJ erred when determining Plaintiff's RFC because the ALJ failed to include functional limitations resulting from her depression and anxiety. *See* 20 C.F.R. §§ 404.1545(a)(2); 416.945(a)(2) (providing that when assessing RFC, consideration is given to all medically determinable impairments, including impairments that are not severe). In support of this claim, Plaintiff relies on her own hearing testimony that she has "unusual thinking," "crying episodes on a weekly basis," and "does not have a lot of social activity." *See* Pl.'s Brf. at p. 6. Plaintiff also relies upon "her need for psychotropic medication," and "her insomnia [and] side effects of medication." *Id*. Plaintiff does not, however, identify any specific functional limitations that should have been included in the RFC. In conclusory fashion, Plaintiff contends only that "her need for psychotropic medication and the limitations in [sic] which she testified . . . do cause some limitations." *Id*. In response, Defendant contends Plaintiff's claim lacks merit because, as noted, she does not "identify any specific, work-related functional limitations that were supported by the record" and the record otherwise fails to support any such functional limitations. *See* Def.'s Brf. at pp. 6-7.

**Treatment Records of Dr. Ryan Aldrich**

Dr. Ryan Aldrich, treated Plaintiff for her pain, depression, anxiety, and insomnia both prior to the alleged onset date of November 1, 2013, and during the period under review. Dr. Aldrich did not assess any functional limitations related to these impairments. His treatment records relative to Plaintiff's first claim of error are summarized below.

*Depression and Anxiety*

On June 2, 2011, Dr. Aldrich saw Plaintiff for "concerns of depression and anxiety." AR 377. He noted that Plaintiff "has a long history of depression and has been hospitalized twice in the past because of suicidal thoughts or attempts." *Id*. Plaintiff was taking 100 mg of Zoloft daily

4

for her depression and seeing a therapist. *Id*. Dr. Aldrich further noted that Plaintiff "uses Ambien at night to sleep" and was also "having panic attack symptoms." AR 378. Dr. Aldrich increased Plaintiff's dosage of Zoloft and additionally prescribed Xanax "to use as needed for panic attack symptoms." AR 380. A few days later, on June 6, 2011, Plaintiff reported to Dr. Aldrich that "she would like to take off of work for the next month at the suggestion of her therapist to get her depression better under control." AR 374. Dr. Aldrich agreed to "complete her FMLA paperwork" and to reevaluate her depression in a few weeks. AR 376. In her follow-up visit on June 20, 2011, Plaintiff reported that the increased dosage of Zoloft "improved her symptoms but her depression certainly has not resolved" and that her "therapist suggested a change in medication." AR 366. Dr. Aldrich provided Plaintiff samples of Cymbalta and scheduled a follow-up visit in four weeks. AR 368.

On July 19, 2011, Plaintiff reported that the Cymbalta was "definitely helping with her emotional symptoms but she had side effects including muscle twitching." AR 362. She stopped taking Cymbalta and resumed taking Zoloft even though it was "not controlling her symptoms well." *Id*. Dr. Aldrich gave Plaintiff samples of Pristiq to try. AR 365.

On August 15, 2011, Dr. Aldrich again saw Plaintiff for treatment of her depression. AR 358. He noted that she was taking samples of Pristiq and it "seems to be helping." *Id*. He reported that Plaintiff had been "off work on FMLA leave" and released Plaintiff to return to work. AR 358-359, 408.

However, a few weeks later on August 23, 2011, Plaintiff again took FMLA leave from work. AR 409. Plaintiff reported to Dr. Aldrich at that time that she thought the Pristiq had been helping but no longer thought it was working. AR 354. Plaintiff reported "severe depression" but no suicidal thoughts. *Id*. Plaintiff also reported that she "was previously seeing psychiatry [sic]

5

but has not seen him for several years." *Id*. Additionally, Plaintiff reported that she was "still going to counseling" and that "[s]he [was] unable to work right now because of her depression." AR 355. Dr. Aldrich resumed the Zoloft and also prescribed Seroquel. AR 357. He further instructed Plaintiff to "contact her previous psychiatrist to arrange follow-up and to "[g]o immediately to the ER for any suicidal thoughts." AR 357.

More than a year later, on December 14, 2012, Dr. Aldrich noted that Plaintiff has "treatment resistant depression and has been on multiple medications." AR 341. He noted that her symptoms had recently increased. *Id*. On that date, however, Dr. Aldrich primarily provided treatment for Plaintiff's complaints of a sore throat. AR 341-342.

Treatment records thereafter reflect that Plaintiff's depression was managed with medication. In August 2013, Plaintiff reported to Dr. Aldrich that her depression was "reasonably well controlled." AR 332. On June 29, 2015, Dr. Aldrich referenced Plaintiff's "severe depression" and noted that she is treated for depression with "200 mg of Zoloft daily" and that "her depression seems stable." AR 411.

*Insomnia*

In August 2013, Plaintiff reported that she was very tired and that "she can be talking to someone and almost fall asleep." AR 332. Dr. Aldrich noted that she was taking Ambien at night that was not effective and that in the past, Trazodone and Lunesta had not worked well. *Id*. Dr. Aldrich discontinued Ambien and Lortab and prescribed Amitriptyline. AR 333.

On April 23, 2015, Dr. Aldrich noted Plaintiff's "long history of insomnia" previously treated with Ambien. AR 416-417. Because Plaintiff reported "her depression was worse with Ambien" Dr. Aldrich gave Plaintiff samples of Silenor to try. AR 418. Dr. Aldrich noted that Plaintiff's insomnia was, in part, "because of pain." AR 417.

A few months later, on June 29, 2015, Plaintiff again saw Dr. Aldrich "for complaints of insomnia and daytime tiredness." AR 411. He noted Plaintiff reported that she was "chronically tired during the day and sometimes cannot stay awake during the day and falls asleep on her couch." *Id*. Additionally, Plaintiff told Dr. Aldrich that "[w]hen she gets extremely exhausted she might sleep for 16 hours consecutively." *Id*. Dr. Aldrich noted that Plaintiff "was referred for a sleep study but never scheduled the procedure." *Id*. He further noted that Plaintiff suffers "chronic narcotic dependent pain which is unchanged." *Id*. Dr. Aldrich's treatment plan was to have Plaintiff "proceed with sleep study as directed" and that he would "see her back" after the sleep study. AR 412.[2] He also noted that he discussed with Plaintiff "possible usage of Seroquel or of Abilify which would help treat her depression as well as possibly improve her insomnia." *Id*.

*Pain*

On February 25, 2011, Dr. Aldrich saw Plaintiff who presented with complaints of tiredness and worsening pain in her lower back. AR 386. He noted Plaintiff's history of back surgery and steroid injections and that Plaintiff takes "chronic narcotics medication." *Id*. He stated that Plaintiff did "not desire to increase the dose of her narcotics because she cannot function at work when she takes higher doses." *Id*. He further noted that Plaintiff "is feeling more depressed and hopeless because of her chronic pain." *Id*. Although Plaintiff expressed that she would "like to pursue other nonsurgical treatment options," Dr. Aldrich noted that "[p]hysical therapy has not been beneficial." AR 386-387. He continued Plaintiff on her current medications and referred her to another doctor for "evaluation of spinal cord stimulator or other recommendations for management of her back pain." AR 388.

---

[2] No evidence in the record indicates whether Plaintiff ever participated in any sleep study.

Thereafter, Plaintiff somewhat episodically saw Dr. Aldrich for complaints of chronic back pain, though it appears she continuously remained on pain medication. On July 12, 2012, Dr. Aldrich observed that Plaintiff "takes morphine routinely with Lortab as needed for pain." AR 352. Plaintiff also was taking Avinza for pain and requested the dosage be increased. *Id*. Plaintiff reported that she had seen a "second neurosurgeon" who advised her the second spinal fusion had been unsuccessful and that no further surgical intervention was recommended. *Id*. Dr. Aldrich increased the dosage of Avinza. AR 353.

Nearly one year later on July 8, 2013, Plaintiff reported to Dr. Aldrich that she lost her insurance and could no longer afford her chronic pain medication. AR 338. Dr. Aldrich prescribed MS Contin and advised Plaintiff that she could not receive narcotic prescriptions from other providers and that he could not give her refills or fax prescriptions for the medication. AR 339.

One month later, on August 20, 2013, Dr. Aldrich reviewed Plaintiff's pain medication. AR 332. He continued Plaintiff on MS Contin and prescribed immediate-release morphine for breakthrough pain. AR 333.

On January 9, 2014, Plaintiff saw Dr. Aldrich for her chronic pain. AR 329. She reported that the MS Contin was making her feel "down" and "fatigued." *Id*. Plaintiff also reported that she "does not have energy but this feels different than depression." *Id*. Dr. Aldrich discontinued the MS Contin and immediate release morphine and prescribed Percocet. AR 330.

**The ALJ's Discussion of Dr. Aldrich's Treatment Records**

The ALJ thoroughly discussed Dr. Aldrich's treatment of Plaintiff. AR 19-21. The ALJ made the following findings pertinent to Plaintiff's claim of error:

> Concerning the issue of the claimant's mental health, the claimant has not required emergent or inpatient care during the period of adjudication. Similarly, she has not sought any formal outpatient mental health services during the period for adjudication, such as counseling or psychotherapy, nor is there any

> recommendation for the same. Instead, the only evidence of mental health care is comprised of different regimens of psychotropic medications for depression and anxiety as prescribed and managed by her treating primary care provider, Dr. Ryan Aldrich. The claimant reports general improvement and stability with these medications. At serial appointments, the claimant presents as alert and fully oriented. She is consistently cooperative and has normal mood with appropriate congruent affect. Although Dr. Aldrich has modified the claimant's psychotropic medications at various times, he finds the claimant has maintained continued stability.

AR 21. This finding supports the ALJ's step-two determination, not challenged by Plaintiff, that her mental impairments are not severe.

The ALJ then properly considered these same non-severe mental impairments when making the RFC determination. AR 24-27. He did not include any limitation in the RFC due to Plaintiff's mental impairments and relied, in part, on the opinions of the state agency psychologist. AR 27. He noted their findings that Plaintiff has only mild restrictions in activities of daily living, maintaining social functioning and maintaining concentration, persistence and pace. *Id*. And he further noted that these findings are "consistent with serial mental status findings, treating medical records, function reports, objective medical evidence, and the overall longitudinal record in its entirety." *Id*.

Plaintiff does not challenge any of these findings. Instead, she contends that her insomnia and side effects of medication are clearly supported by the medical records. *See* Pl.'s Brief at p. 6. She further cites her own testimony at the hearing before the ALJ regarding side effects of her medication. *Id*. at p. 7. And, Plaintiff claims the ALJ ignored the testimony of the medical expert, Dr. Darius Ghazi, who addressed typical side effects of pain medication. *Id*. at pp. 7-8. Plaintiff argues that even though the ALJ gave the medical expert's opinion "substantial weight" he ignored testimony regarding Plaintiff's mental impairments.

**The Testimony of the Medical Expert, Dr. Ghazi**

At the hearing, Dr. Ghazi testified that Plaintiff's impairments, including arthritis of the back and disorders of the spine, did not meet or equal a listing. AR 42-43. He further testified, based upon his review of the record, that he did not see a "discernable orthopedic issue to render [Plaintiff] disabled at this time." AR 42. Additionally, Dr. Ghazi opined that Plaintiff was "inappropriately heavily medicated" with narcotics. AR 44. In support, Dr. Ghazi testified that "[t]he condition [Plaintiff's] suffering from basically is appropriate for her age" and "generally addressed by anti-inflammatory medications and the non-narcotic drugs and physical therapy, et cetera." *Id*.

Upon questioning by Plaintiff's attorney, Dr. Ghazi acknowledged that Plaintiff "has some mental issues . . . like depression, anxiety, and some headaches." AR 45. Plaintiff's counsel then asked whether "with the medication [Plaintiff is] receiving, also with the depression, would it be consistent that she would have issues with concentration and memory and drowsiness[.]" AR 45-46. Dr. Ghazi responded: "Oh, definitely. Yes." AR 46. Plaintiff's counsel did not make any further inquiry of Dr. Ghazi. *Id*. The ALJ, however, additionally asked whether it was "an automatic or a given" that with Plaintiff's medications "side effects of drowsiness, [and] interference with concentration" would occur. *Id*. Dr. Ghazi responded: "With any dose of the narcotics you're bound to have effects like that." *Id*.

Plaintiff is correct that the medical record supports that she suffers from depression and anxiety and that she has reported to her treating physician that she suffers from fatigue and an inability to sleep. Dr. Ghazi's testimony further supports that Plaintiff's depression and medication side effects could result in issues with concentration, memory and drowsiness. But the mere

presence of a condition or ailment is insufficient to establish disability. *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997).

Here, Plaintiff has not shown any medical evidence demonstrating the degree of functional limitations associated with her pain, insomnia, depression and medications. *Compare Fulton v. Colvin*, 631 F. App'x 498, 501 (10th Cir. 2015) (treating physician's treatment records demonstrating the claimant was prescribed anti-depressants several times in response to complaints of depression and anxiety were not significantly probative evidence where physician did not give an opinion about the functional limitations, if any, that these conditions imposed).

Plaintiff criticizes the ALJ's reliance on the fact that Dr. Ghazi "did not opine as to the degree that concentration may be reduced" to support not including any mental limitations in the RFC. *See* Pl.'s Brf. at p. 8 ("[T]he ALJ justifies not including mental limitations because Dr. Ghazi did not opine as to the degree that concentration may be reduced." (*citing* AR 26)). But the ALJ's reliance on this fact was a proper basis for not including any limitations related thereto in the RFC. *See, e.g., Fulton;* 631 F. Appx. at 501; *see also Alderete v. Barnhart*, 114 F. App'x 353, 357 (10th Cir. 2004) (upholding ALJ's decision not to give significant weight to treating physician's opinion on grounds treating physician "did not list any specific functional limitations" where treatment notes reflected claimant's "symptoms and diagnoses, but [did] not provide any specific limitations that link[ed] [the claimant's] depression and insomnia secondary to drug abuse to the conclusion that he cannot work").

In sum, Plaintiff has failed to demonstrate the ALJ erred by not including mental limitations in the RFC determination. Whether Plaintiff's subjective complaints warrant additional limitations

in the RFC is best addressed below in the context of Plaintiff's second claim of error challenging the ALJ's credibility determination.[3]

**The ALJ Had No Duty to Further Develop the Record**

As part of her first claim of error, Plaintiff contends the ALJ should have further developed the record "to ascertain the degree of the mental limitation caused by the side effects of medication." *See* Pl.'s Brf. at p. 8. But Plaintiff fails to demonstrate that the record was not fully developed.

"It is beyond dispute that the burden to prove disability in a social security case is on the claimant." *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir.1997); *see also* 20 C.F.R. §§ 404.1512(a); 416.912(a). Moreover, the administrative law judge has a duty to develop the record, but where, as in this case, a claimant is represented by counsel, the administrative law judge is ordinarily "'entitled to rely on the claimant's counsel to structure and present [the] claimant's case in a way that the claimant's claims are adequately explored.'" *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (*quoting Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997)).

"The ALJ's duty to further develop the record is triggered by conflicts, inconsistencies or inconclusive findings in the medical record requiring further investigation." *Maestas v. Colvin*, 618 F. App'x 358, 361 (10th Cir. 2015) (*citing Hawkins*, 113 F.3d at 1166-67). Here, Plaintiff fails to identify any conflicts or inconsistencies in the medical record. Instead, Plaintiff appears to allege the medical evidence is inconclusive regarding the degree of limitations Plaintiff suffers from the side effects of her medications. Plaintiff contends the ALJ should have recontacted Dr.

---

[3] RFC and credibility determinations are "inherently intertwined" because "the purpose of the credibility determination is to help the ALJ assess a claimant's RFC." *See Poppa*, 569 F.3d at 1171.

Aldrich, *see* 20 C.F.R. §§ 404.1520b(c), 416.920b(c), or sought further clarification from Dr. Ghazi.

Plaintiff relies on *Maes*, 522 F.3d at 1098-1099 in support of this argument. But *Maes* is readily distinguished. There, the Tenth Circuit found the ALJ had a duty to recontact a medical source because the claimant had been prescribed medication to treat depression, but there was no evidence in the record as to whether the claimant had been "specifically diagnosed with or treated for depression or another medical condition." *Id*. at 1098. This lack of evidence rendered it impossible to determine whether the claimant's mental impairment might have rendered her disabled. *Id*. Here, conversely, the record clearly demonstrates Dr. Aldrich treated Plaintiff for depression and anxiety and prescribed medication for these conditions. In addition, a state-agency psychologist opined that Plaintiff's mental impairments were not severe, based upon a review of the record. AR 75. Unlike the circumstances present in *Maes*, therefore, here the record was sufficiently developed for the ALJ to make a determination.

The ALJ properly relied upon the record evidence and drew reasonable inferences therefrom in support of his findings. Moreover, Plaintiff fails to demonstrate how recontacting Dr. Aldrich would have been helpful to the ALJ. *Cf. Borgsmiller v. Astrue*, 499 F. App'x 812, 816 (10th Cir. 2012) (rejecting the claimant's argument that the ALJ had a duty to recontact her treating physician because the record was unclear as to the number and frequency of her "flares of pain"; it did not appear further contact would have provided ALJ with more clarity and treating physician's notes "reflect[ed] only [the claimant's] self-reporting of her flares and the duration of those flares").[4] In essence, Plaintiff seeks not further development of the record, but a reweighing

---

[4] Dr. Aldrich stated in a "To Whom It May Concern" letter that he "declined to complete disability paperwork on Ms. Mathews based on long-standing clinic policy regarding disability

13

of the evidence. This Court, however, must not "second-guess" the ALJ's decision. *See White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001).

### B. The ALJ's Credibility Analysis is Supported by Substantial Evidence

Plaintiff next challenges the ALJ's credibility analysis. Plaintiff acknowledges that the ALJ did "provide some reasons as to why she has found Mathews not entirely credible" but contends these reasons are nothing more than a recitation of "simple activities." *See* Pl.'s Brf. at pp. 9-10. Plaintiff claims the ALJ "fails to put these activities into perspective." *Id*. at p. 10. Plaintiff further claims the ALJ impermissibly ignored evidence that she reported side effects of her medication to Dr. Aldrich. *Id*. at pp. 12-13. Finally, she cites medical evidence to support her complaints of back pain. *Id*. at p. 13.

Defendant argues in response that the ALJ provided several reasons for discounting Plaintiff's subjective complaints including Plaintiff's daily activities, the opinions of the state agency physicians and the medical expert, and the objective medical evidence. *See* Def.'s Brf. at pp. 11-12. Defendant contends that Plaintiff's challenge to the ALJ's credibility determination is nothing more than an impermissible request to this Court to reweigh the evidence. *Id*. at p. 12.

The Court will not disturb an ALJ's credibility findings if they are supported by substantial evidence because "[c]redibility determinations are peculiarly the province of the finder of fact." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (*citing Diaz v. Secretary of Health & Human Servs*., 898 F.2d 774, 777 (10th Cir. 1990)). Credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id*. (*citing Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir.1988) (footnote omitted)). The ALJ may

---

determination" but that "[t]his in no way reflects on Ms. Mathews' disability due to depression and chronic pain or lack thereof." AR 433.

consider a number of factors in assessing a claimant's credibility, including "the levels of medication and their effectiveness, the extensiveness of the attempts . . . to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, . . . and the consistency or compatibility of nonmedical testimony with objective medical evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).

The ALJ conducted a detailed and thorough review of the evidence and applied the correct legal standards when evaluating Plaintiff's subjective complaints. AR 23-27. The ALJ addressed Plaintiff's daily activities and found them to be inconsistent with the degree of limitations Plaintiff alleges she suffers. AR 25. To the extent Plaintiff claims the ALJ "failed to put these activities in context" Plaintiff merely "contests the weight the ALJ gave to these particular factors [and] asks that [this Court] reweigh the evidence and displace the agency's choice, which [the Court] cannot do." *Romero v. Colvin*, 563 F. App'x 618, 622 (10th Cir. 2014) (citations omitted).

The ALJ also addressed the opinions of the state agency consultants and the medical expert – with respect to both Plaintiff's physical and mental limitations – and concluded those opinions were consistent with the medical record and with each other. AR 26-27. For each of the ALJ's findings, he made specific citation to the record evidence supporting his findings. *Id*.

The only finding by the ALJ that Plaintiff specifically claims is contrary to the record evidence is the following:

> The claimant testified that Dr. Aldrich prescribes her Lidocaine patches and pain medications, which help reduce the pain, but she still has pain. Although the medical records are silent concerning the same, she testified her medications cause terrible constipation and make her feel really tired and sleepy a lot, which makes it hard to concentrate.

15

AR 24. Plaintiff contends the medical evidence demonstrates that she "reported her medications causing tiredness and fatigue to Dr. Aldrich." *See* Pl.'s Brf. at pp. 12-13 (*citing* AR 329, 332, 338, 385, 387). But the citations to the record relied upon by Plaintiff relate to side effects from medications discontinued by Dr. Aldrich or side effects which, in response to Plaintiff's complaints, Dr. Aldrich made adjustments. And while Plaintiff does report tiredness, she does not report constipation or an inability to concentrate. Moreover, her reports of fatigue relate to insomnia, and not the side effects of pain medications. Contrary to Plaintiff's contention, therefore, the ALJ's assessment is not inconsistent with Dr. Aldrich's treatment records.

Plaintiff has failed to demonstrate the ALJ's credibility findings are not supported by substantial evidence or that the ALJ committed legal error in making those findings. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) ("'The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.'") (*citing Zoltanksi v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). Plaintiff's argument invites the Court to engage in what is expressly forbidden on review of an ALJ's credibility analysis – i.e., reweighing the evidence or substituting the Court's own judgment for that of the Commissioner. *See White*, 287 F.3d at 909; *see also Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005). Even if, as Plaintiff contends, the evidence might support a different result than that reached by the ALJ, this Court cannot and will not reweigh the evidence. Therefore, Plaintiff's challenge to the ALJ's credibility determination is without merit.

## VI. Conclusion

The Court concludes the ALJ did not err in reaching the inherently intertwined RFC and credibility determinations by omitting any limitation due to mental impairments or medication side

effects.  The record was adequately developed and substantial evidence supports the ALJ's findings.

The decision of the Commissioner is AFFIRMED.

ENTERED this 19th day of January, 2017.

_____
BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE